IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01831-PSF-CBS

KENNETH RAINGE-EL,
        Plaintiff,
v.

HOYT BRILL,
DEANN POTTORF, and
CORY CUMMINGS
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This matter comes before the court on: (1) the "Motion for Summary Judgment

from Defendants Hoyt Brill, Deann Pottorff and Cory Cummings" (filed March 30, 2007)

(doc. # 116) and (2) Mr. Rainge-El's "Motion for Summary Pursuant to Rule 56 of

F.R.C.P." (filed April 2, 2007) (doc. # 120).  Pursuant to the Order of Reference dated

November 9, 2005 (doc. # 11) and the memorandum dated April 16, 2007 (doc. # 122),

the Motions were referred to the Magistrate Judge.  The court has reviewed the

Motions, Mr. Rainge-El's "Declaration in Opposition . . . " (filed April 13, 2007) (doc. #

121), Defendants' Response (filed April 19, 2007) (doc. # 124), Defendants' Reply

(filed April 27, 2007) (doc. # 129), the exhibits and affidavits, the entire case file, and

the applicable law and is sufficiently advised in the premises.


I.      Statement of the Case

1

Proceeding *pro se,* Mr. Rainge-El initiated this civil action pursuant to 42 U.S.C. § 1983.  (*See* Complaint (doc. # 3); Amended Complaint (doc. # 21), Second Amended Complaint (doc. # 23)).  At the time he filed this action, Mr. Rainge-El was incarcerated at the Kit Carson Correctional Center ("KCCC").  On or about September 1, 2007, Mr. Rainge-El was released from custody.  (*See* doc. # 134).

In the Second Amended Complaint ("SAC"), Mr. Rainge-El asserted four claims for relief. Claims One and Two were asserted against Defendants Stommel and Moschetti, employees of the Colorado Department of Corrections ("CDOC").  On July 5, 2006, the District Judge dismissed Claims One and Two with prejudice, thereby also dismissing Defendants Stommel and Moschetti from this action.  (*See* "Order on Magistrate Judge's Recommendation dated June 6, 2006" (doc. # 79) at p. 9 of 10).

Mr. Rainge-El asserts Claims Three and Four against Defendants Brill, Pottorf, and Cummings.  At the time relevant to Mr. Rainge-El's claims, Defendants Brill, Pottorf, and Cummings were employees of the Corrections Corporation of America ("CCA"), a private contractor that operates KCCC.  Mr. Rainge-El seeks declaratory and injunctive relief, compensatory damages, and punitive damages.  (*See* SAC (doc. # 23) at pp. 13-15).  Defendants have moved for summary judgment on several grounds.

II.     Standard of Review

Summary judgment is appropriate under F. R. Civ. P. 56(c) if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  When applying this standard, a court reviews the

2

pleadings and the documentary evidence in the light most favorable to the
nonmoving party.  To defeat a properly supported motion for summary
judgment, there must be evidence on which the jury could reasonably find
for the nonmoving party.  In addition, where the non moving party will
bear the burden of proof at trial on a dispositive issue that party must go
beyond the pleadings and designate specific facts so as to make a
showing sufficient to establish the existence of an element essential to
that party's case in order to survive summary judgment.

*Farmers Alliance Mut. Ins. Co. v. Cutrone*, 448 F. Supp. 2d 1226, 1228-29 (D. Colo.

2006) (internal quotation marks and citations omitted).  "When parties file

cross-motions for summary judgment and there is no nonmoving party, the Court may

assume that it need not consider any evidence other than materials filed by the

parties." *Id*.


III.    Analysis

       Mr. Rainge-El brings his constitutional claims under 42 U.S.C. § 1983.  Under 42

U.S.C. § 1983, Mr. Rainge-El must establish "(1) a violation of rights protected by the

federal Constitution or created by federal statute or regulation, (2) proximately caused

(3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance,

regulation, custom[,] or usage, of any State or Territory or the District of Columbia."

*Summum v. City of Ogden,* 297 F.3d 995, 1000-1001 (10th Cir. 2002) (internal

quotation marks and citations omitted).  Mr. Rainge-El argues that his claims arise

under the "First Amendment of the U.S. Const., Eighth Amendment of the U.S. Const.,

Due Process Clause of the Fourteenth Amendment to the U.S. Const., 42 USCA §

1985, and 5 USCA §552a(e)(5), (g)(1)(c), (g)(4) 'Privacy Act.' " (*See* SAC (doc. # 23) at

3

p. 4 of 15;  Mr. Rainge-El's Motion (doc. # 120) at p. 4 of 13).

A.     Claim Three

In Claim Three, Mr. Rainge-El "alleges deliberate indifference to plaintiff's religious rights arising from the withholding from plaintiff of religious pins he ordered from a vendor outside the prison, and the subsequent loss of those pins." (*See* "Order on Magistrate Judge's Recommendation . . ." (doc. # 79) at p. 8 of 10).  Mr. Rainge-El brings Claim Three against Defendants Cummings and Brill.  (*See* Defendants' Exhibit A-14 (doc. # 116-15) at p. 7 of 34).

1.     First Amendment

"The Free Exercise Clause mandates that prison authorities afford prisoners reasonable opportunities to exercise their sincerely held religious beliefs." *Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2003) (citation omitted).  "Inmates' free exercise rights are, however, subject to prison restrictions rationally related to legitimate penological interests." *Id.*

Mr. Rainge-El alleges that he is a member of the Moorish Science Temple of America ("MSTA").  (*See* SAC (doc. # 23) at p. 10 of 15).  On December 15, 2004, Mr. Rainge-El ordered ten MSTA pins from the Moorish American Publishing Company. (*See* SAC (doc. # 23) at p. 5 of 15).  The pins arrived at the KCCC mailroom on February 9, 2005.  (*See Id.*).  After consulting the mailroom supervisor and based upon

4

the criteria for offender mail, Ms. Davis, an employee in the mailroom, issued a Notice of Rejection and confiscated the pins.  (*See* Defendants' Exhibits A-4, A-5, and A-6 (docs. # 116-5, # 116-6, and # 116-7)).

Mr. Rainge-El grieved the confiscation of his MSTA pins through the prison grievance system.  (*See* SAC (doc. # 23) at p. 5 of 15; Defendants' Exhibit A-7 (doc. # 116-8)).  Ms. Davis responded to Mr. Rainge-El's Step I grievance, stating that the pins were denied because they had metal pointed tips and constituted a security risk.  (*See* Defendants' Exhibit A-7 (doc. # 116-8)).  Mr. Rainge-El filed a Step II grievance on March 4, 2005, which was denied on March 8, 2005.  (*See* Defendants' Exhibit A-8 (doc. # 116-9)).  Mr. Rainge-El filed a Step III grievance and on September 26, 2005 the Step III Grievance Officer recommended granting relief.  (*See* Defendants' Exhibit A-9 (doc. # 116-10)).  Defendant Brill granted the relief on September 28, 2005.  (*See* Defendants' Exhibit A-9 (doc. # 116-10)).  CDOC's Executive Director approved the relief on September 29, 2005 and noted "Directives to prevent future incidents in place. Medals in question to be replaced."  (*See* Defendants' Exhibit A-10 (doc. # 116-11)). Mr. Rainge-El was notified of the decision on October 6, 2005.  (*See* Defendants' Exhibit A-11 (doc. # 116-12)).

As of the date of the decision on Mr. Rainge-El's Step III grievance, the pins had been destroyed pursuant to regulations governing offender mail.  (*See* Defendants' Exhibit A-6 (doc. # 116-7) at p. 2 of 3).  Because the pins had been destroyed, Mr. Rainge-El's inmate account was reimbursed in the amount of $2.50, the amount Mr. Rainge-El paid for the pins.  (*See* Defendants' Exhibits A-6 (doc. # 116-7) at p. 3 of 3;

A-12 (doc. # 116-13); A-13 (doc. # 116-14); A-14 (doc. # 116-15) at p. 32 of 34).  After

obtaining a favorable ruling on his Step III grievance and reimbursement for the pins,

Mr. Rainge-El made no further effort to re-order or obtain MSTA pins.  (*See*

Defendants' Exhibit A-14 (doc. # 116-15) at p. 2  of 34).

        Defendants do not dispute that Mr. Rainge-El's MSTA pins were authorized

under the Colorado Department of Corrections ("CDOC") regulations and were

improperly confiscated and destroyed.  Defendants dispute Mr. Rainge-El's contention

that they deliberately confiscated the pins for the purpose of interfering with his right to

exercise his religion.

        "Section 1983 imposes liability for violations of rights protected by the

Constitution, not for violations of duties of care . . . ."  *Baker v. McClellan*, 443 U.S. 137,

146 (1979).  The record does not support Mr. Rainge-El's allegation that the

confiscation was deliberate.  The evidence shows that the confiscation of the pins was

simply an administrative error in applying CDOC's Administrative Regulations.  (*See*

Defendants' Exhibits A-6 (doc. # 116-7) at ¶¶ 2, 8; A-7 (doc. # 116-8)).  Mr. Rainge-El

merely speculates that the confiscation of the pins was deliberate.  (*See* Defendants'

Exhibit A-14 (doc. # 116-15) at pp. 4-5 of 34).  Mr. Rainge-El has not presented any

evidence that the confiscation was deliberate for the purpose of interfering with the

exercise of his religion.

        Mr. Rainge-El has not demonstrated that the loss of the MSTA pins imposed any

restriction on his practice of his religion.  The record establishes that Mr. Rainge-El was

not deprived of all religious items, but instead received other items in the same

shipment as the pins.  (*See* Defendants' Exhibit A-5 (doc. # 116-6)).  Mr. Rainge-El never attempted to replace the pins after he was reimbursed for their loss.  Mr. Rainge-El has not demonstrated the significance of the pins to his religion or that the temporary deprivation of the pins interfered with the exercise of his religion.  (*See* Defendants' Exhibit A-14 (doc. # 116-15) at p. 2 of 34).  Mr. Rainge-El has not demonstrated that the loss of the pins denied him the opportunity to exercise his sincerely held religious beliefs.  *See Hammons*, 348 F.3d at 1254 (citation omitted).  Mr. Rainge-El has not established a violation of his First Amendment rights.

2.      Negligence

Mr. Rainge-El also alleges that Defendants acted "with negligence."  (*See* SAC (doc. # 23) at p. 9 of 15).  Claims of § 1983 liability may not be predicated on negligence.  *Daniels v. Williams*, 474 U.S. 327, 330, 106 S. Ct. 662 (1986).  *See also Medina v. City and County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992) ("negligence and gross negligence do not give rise to section 1983 liability").  To the extent that Mr. Rainge El's claims are based upon negligent conduct, they do not state a claim upon which relief can be granted.

3.      Due Process

Mr. Rainge-El purports to allege a violation of due process arising from the destruction of his MSTA pins.  (*See* Amended Complaint (doc. # 23) at p. 9 of 15 ("because the necessary procedural safeguards were not evidently in place or blatantly

7

disregarded")).

The Due Process Clause of the Fourteenth Amendment provides, in pertinent part "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. Amend. XIV.  Beyond demonstrating a protected interest, Mr. Rainge-El must also show that he was deprived of that interest without due process.  *See Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998) ("this inquiry examines 'the procedural safeguards built into the statutory or administrative procedure for effecting the deprivation and any remedies for erroneous deprivations . . . .' ").  Negligent deprivations of property do not violate the Due Process Clause.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Nor does an unauthorized intentional deprivation of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Id.*

Here, Mr. Rainge-El utilized the adequate post-deprivation remedy available to him and obtained the relief he sought.  Mr. Rainge-El received an order specifically confirming that he was permitted to possess the MSTA pins and received reimbursement for the pins that were destroyed.  As Mr. Rainge-El has not demonstrated that he was denied an adequate state remedy, he has not stated a claim for deprivation of procedural due process with respect to the MSTA pins.

4.      Personal Participation

Individual liability under § 1983, regardless of the particular constitutional theory,

8

must be based upon personal responsibility.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted);  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted);  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").  A defendant may not be held liable merely because of his or her supervisory position.  *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).  There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise.  *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  A plaintiff must allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's participation. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001).

Mr. Rainge-El alleges that Defendant Brill "failed to ensure the records of the materials and the faith items" and "thus, items were lost during the appeal process" and that "[i]f Defendant Brill would have done [his] duties without bias, this infringement, and negligence resulting in damages would have been avoided."  (Amended Complaint (doc. # 23) at pp. 5, 9 of 15).  Mr. Rainge-El has not demonstrated that Defendant Brill had any personal participation in or any supervisory liability for the alleged violations of his constitutional rights.  Mr. Rainge-El does not contend that Defendant Brill was personally responsible for confiscating or destroying the pins.  (*See* Defendants' Exhibit

9

A-14 (doc. # 116-15) at pp. 4-5 of 34 ("it's in his supervisory capacity to ensure that his subordinates are to adhere to their duties . . . )).  Mr. Rainge-El has not alleged or demonstrated Defendant Brill had any direct contact with him, that Defendant Brill was present during any of the conduct alleged, or that Defendant Brill actually knew of and acquiesced in the alleged violation.  Mr. Rainge-El's list of Defendant Brill's duties does not establish his personal participation in the alleged constitutional violation.  (*See* Mr. Rainge-El's Motion (doc. # 120) at p. 5 of 13).

As Mr. Rainge-El has failed to allege or establish an affirmative link between the alleged constitutional violation and Defendant Brill's participation, there is no basis for holding Defendant Brill liable under §1983.


B.     Claim Four

In Claim Four, Mr. Rainge-El "alleges that he was retaliated against for exercising his religious beliefs and for seeking redress for the matters alleged in his third claim, when he was classified as a security threat group ("STG") by the CCA officers and removed from the general prison population."  (*See* "Order on Magistrate Judge's Recommendation . . ." (doc. # 79) at p. 8 of 10).  Mr. Rainge-El brings Claim Four against Defendant Pottorff.  (*See* Defendants' Exhibit A-14 (doc. # 116-15) at pp. 6-7 of 34).

Mr. Rainge-El was sentenced for several offenses on July 24, 1995 and arrived at CDOC on August 30, 1995.  (*See* Defendants' Exhibit A-1 (doc. # 118-2) (**under**

seal)).[1]  Upon Mr. Rainge-El's admittance to CDOC, his records indicated that he was

affiliated with a gang identified as "Crips-5 Deuce-Broadway G."  (*See id.*; Defendants'

Exhibits A-2 (doc. # 116-3) (alert to "Security Threat Group" ("STG") at Sterling

Correctional Facility prior to arrival at KCCC); A-15 (doc. # 116-16) at ¶ 4).  Mr. Rainge-

El was transferred to KCCC on October 24, 2003.  (*See* Defendants' Exhibits A-3 (doc.

# A-3); A-15 (doc. # 116-16) at ¶ 4).

        As part of the intake process, Defendant Pottorff met with new inmates, such as

Mr. Rainge-El, who were listed with CDOC as members of an STG.  (*See* Defendants'

Exhibit A-15 (doc. # 116-16) at ¶ 2).  Defendant Pottorff met with Mr. Range-El on

October 26, 2003, at which time Mr. Rainge-El denied any association with a gang.

(*See* Defendants' Exhibit A-15 (doc. # 116-16) at ¶ 5).

        Approximately sixteen months later, Mr. Rainge-El approached Defendant

Pottorff regarding his STG status and the withholding of certain confiscated literature.

(*See* Defendants' Exhibit A-15 (doc. # 116-16) at ¶¶ 6-9).  At that time, Defendant

Pottorff explained to Mr. Rainge-El that if he wished to challenge his  STG designation,

---

        [1]      Mr. Rainge-El argues that the court may not consider Exhibit A-1 because
Defendants did not obtain a release and because it was not authenticated.  When
asked during the discovery process to provide a release, Mr. Rainge-El responded that
Defendants were entitled to access his inmate records maintained by the CDOC.  (*See*
Exhibit A-21 (doc. # 129-3) at p. 4 of 5).  Under CDOC policies governing an inmate's
CDOC file, any privacy interest in that file is waived upon filing a lawsuit "so that it may
be obtained by counsel defending the DOC or its contractors without a release."  (*See*
Defendant's Exhibit A-20 (doc. # 129-2) at ¶ 2).  Further, an inmate's CDOC file
contains records regularly kept in the course of regularly conducted activities of
housing and managing inmates.  (*See* Defendant's Exhibit A-20 (doc. # 129-2) at ¶ 2;
Fed. R. Evid. 902).  Even if the court did not to consider Exhibit A-1, Mr. Rainge-El has
not demonstrated that any of the Defendants created his STG designation based on his
religion.

he must contact CDOC.  (*See* Defendants' Exhibit A-15 (doc. # 116-16) at ¶ 10).

CDOC "has the responsibility for issuing security threat group classifications to DOC

inmates entering the system."  (Defendants' Exhibit A-15 (doc. # 116-16) at ¶ 3).

Defendant Pottorff had only "the authority to add any STG related incidents that occur

and is documented in that inmate[']s file."  (*Id.*).  Mr. Rainge-El never attempted to

change his STG designation.  (*See* Defendants' Exhibits A-15 (doc. # 116-16) at ¶ 11;

A-14 (doc. # 116-15) at pp. 10-11 of 34).

In June and July of 2005, KCCC experienced a large number of fights and

assaults among inmates.  (*See* Defendants' Exhibit A-18 (doc. # 116-19) (response to

Step I grievance)).  In order to investigate and control this situation, KCCC moved

some inmates from their regular living quarters to the AC Unit under modified lock-

down.  (*See id.*).  Mr. Rainge-El and other inmates were placed in the AC Unit based on

their classification, STG status, and documented behavior.  (*See* Defendants' Exhibit A-

18 (doc. # 116-19)).  Mr. Rainge-El was placed in the AC Unit from August 5, 2005 until

August 10, 2005.  (*See* SAC (doc. # 23) at p. 10 of 15).

1.     STG Designation

Prison "officials may not retaliate against or harass an inmate because of the

inmate's exercise of his constitutional rights . . . even where the action taken in

retaliation would be otherwise permissible."  *Peterson v. Shanks*, 149 F.3d 1140, 1144

(10th Cir. 1998) (internal quotation marks and citation omitted).  Nevertheless, "an

inmate is not inoculated from the normal conditions of confinement . . . merely because

he has engaged in protected activity." *Peterson*, 149 F.3d at 1144.  Not "every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506 (2002).

"[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted).  "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted).  If Defendants have "made a properly supported motion [for summary judgment], the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

The evidence shows that Mr. Rainge-El was labeled as a member of an STG upon his entry to the CDOC and that, having no authority to create or remove an STG designation, Defendant Pottorff merely made a note in his file.  Mr. Rainge-El concedes that his records upon arrival to KCCC indicated his affiliation with an STG.  (*See* Defendants' Exhibit A-14 (doc. # 116-15) at pp. 7-9 of 34).  At the time that Mr. Rainge-El arrived at KCCC and Defendant Pottorff interviewed him, his religion was noted as "Other," not as MSTA.  (*See* Defendants' Exhibit A-1 (doc. # 118-2).  Mr. Rainge-El has not adduced any evidence of improper conduct or motive by Defendant Pottorff

regarding his STG designation.  To the extent that Mr. Rainge-El disagreed with his

STG designation, he has not alleged or demonstrated that the named Defendants were

responsible for that designation.  In sum, there is no basis for holding Defendant

Pottorff liable on Mr. Rainge-El's retaliation claim based on his STG designation.


      2.    AC Unit

     Mr. Rainge-El alleges that he was placed in the AC Unit from August 5, 2005 to

August 10, 2005 in retaliation for exercising his religious beliefs and for seeking

redress for the loss of his MSTA pins.

     Mr. Rainge-El has not presented any evidence of improper motive regarding his

brief transfer to the AC Unit.  Mr. Rainge-El concedes that he does not know the reason

for his short stay in the AC Unit (*see* Defendants' Exhibit A-14 (doc. # 116-15) at pp.

14, 19, 29 of 34), but that "it was stated that there was some violence going on in the

facility."  (*See* Defendants' Exhibit A-14 (doc. # 116-15) at pp. 18, 21 of 34).  The

evidence demonstrates that Mr. Rainge-El's brief relocation was based on legitimate

administrative and penological concerns and not based on his religion.

     Mr. Rainge-El alleges that he was the only member of the MTSA who was

moved from his regular living quarters to the AC Unit.  (*See* SAC (doc. # 23) at p. 10 of

15).  Mr. Rainge-El's own allegation that no other MSTA members were affected fails to

support his claim for retaliation on the basis of his religion.

     Mr. Rainge-El has not refuted the evidence that Defendant Pottorff had no

"involvement in the decision to move Mr. Rainge El from the C Unit to the A Unit

14

between August 5 and August 10 of 2005" and that Defendant Pottorff has "no idea why Mr. Rainge El  was moved during this period." (Defendants' Exhibit A-15 (doc. # 116-16) at ¶ 12).   Nor has Mr. Rainge-El challenged the evidence that Defendant Cummings "had no involvement in any decision to move Plaintiff from Unit C to Unit A between August 5 and 10 of 2005" and that he does "not know why Plaintiff was moved at that time." (Defendants' Exhibit A-6 (doc. # 116-7) at ¶ 9).   Mr. Rainge-El attempts to impose liability on Defendant Cummings based solely on his supervisory status. (*See* Defendants' Exhibit A-14 (doc. # 116-15) at pp. 23-27 of 34).   Mr. Rainge-El's listing of Cummings' and Pottorff's duties does not prove their involvement in the claim alleged. (*See* Mr. Rainge-El's Motion (doc. # 120) at pp. 4-5, 7 of 13).   There is no basis for holding Defendants Pottorff or Cummings liable for Mr. Rainge-El's transfer to the AC Unit.

In order to prevail on his claim, Mr. Rainge-El must establish that Defendants' actions deprived him of some federal right. *Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) (internal quotation marks and citation omitted).   Mr. Rainge-El seems to allege that his temporary placement in the AC Unit violated his Fourteenth Amendment due process rights and his Eighth Amendment rights. (*See* Mr. Rainge-El's Motion (doc. # 120) at p. 8 of 13).

"The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.' " *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007).   "The Supreme Court has held that a protected liberty interest may arise from prison placement decisions and

15

conditions of confinement." *Estate of DiMarco*, 473 F.3d at 1340.  The Supreme Court

has "emphasized that the touchstone of the due process inquiry is not the precise

language of a state's regulations regarding 'restrictive conditions of confinement' but

'the nature of those conditions themselves 'in relation to the ordinary incidents of prison

life.' " *Wilkinson v. Austin*, 545 U.S. 209, 223 (quoting *Sandin v. Conner*, 515 U.S. 472,

484 (1995)).  The Tenth Circuit has determined that "[r]elevant factors might include

whether (1) the segregation relates to and furthers a legitimate penological interest,

such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the

placement increases the duration of confinement . . . ; and (4) the placement is

indeterminate." *Estate of DiMarco*, 473 F.3d at 1342.

Here, not one of the relevant factors weighs in favor of finding that Mr. Rainge-El

had an enforceable liberty interest.  The evidence demonstrates that Mr. Rainge-El's

brief relocation to the AC Unit was based on legitimate administrative and penological

concerns, did not extend his confinement, and was no more than six days.  The

conditions in the AC Unit were not atypical or extreme.  The inmates in the AC Unit

were double bunked and were permitted to have all of their belongings.  (*See*

Defendants' Exhibit A-14 (doc. # 116-15) at pp. 13, 16 of 34).  While in the AC Unit, Mr.

Rainge-El was not permitted to shower for four days, was not permitted phone calls,

and did not have access to the law library.  (*See* Defendants' Exhibit A-14 (doc. # 116-

15) at pp. 13, 16 of 34).  He could not file grievances for approximately two days and

his cell was not "sanitize[d]" as usual.  (*See id.* at pp. 15, 16-17 of 34).  The loss for

less than six days of some of the privileges allowed inmates in the general population

16

is not an atypical or significant deprivation and fails to state a violation of the due process clause of the Fourteenth Amendment.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII.  "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  As for the objective component, "extreme deprivations" are required to make out a conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  In a conditions-of-confinement case, a "sufficiently serious" deprivation is shown when "a prison official's act or omission . . . result[s] in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

The evidence shows that Mr. Rainge-El's short stay in the AC Unit was not sufficiently serious to state a violation of the Eighth Amendment, as he was not denied "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotation marks and citation omitted).  Mr. Rainge-El fails to state or prove a claim for

17

an Eighth Amendment violation.

C.      Compensatory Damages

Defendants move for summary judgment on Mr. Rainge-El's claim for monetary

damages because Mr. Rainge-El has not alleged that he suffered any physical injury,

which is a requirement for an inmate to bring a federal claim for monetary damages.

*See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner

confined in a jail, prison, or other correctional facility, for mental or emotional injury

suffered while in custody without a prior showing of physical injury.").  "[A]lthough

claims for mental and emotional distress can be brought pursuant to § 1983, . . . §

1997e(e) provides that ‹such a suit cannot stand unless the plaintiff has suffered a

physical injury in addition to mental or emotional harms.'"  *Turner v. Schultz*, 130 F.

Supp. 2d 1216, 1222-23 (D. Colo. 2001) (quoting *Perkins v. Kansas Dept. Corrections*,

165 F.3d 803, 807 (10th Cir. 1999)).  *See also Searles v. Van Bebber*, 251 F.3d 869,

876 (10th Cir. 2001) ("The statute limits the remedies available, regardless of the rights

asserted, if the only injuries are mental or emotional.");  *Thompson v. Gibson*, 289 F.3d

1218, 1222 (10th Cir. 2002) (citing 42 U.S.C. § 1997e(e)) ("As to [a] claim for emotional

distress, no § 1983 action can be brought unless the plaintiff has suffered physical

injury in addition to mental and emotional harms.").

Mr. Rainge-El concedes that he has not alleged or demonstrated that he

suffered any physical injury.  (*See* Defendants' Exhibit A-14 (doc. # 116-15) at pp. 30-

31 of 34).  As Mr. Rainge-El has made no showing of physical injury, Defendants are

18

entitled to summary judgment on his claim for compensatory damages.

D.     Punitive Damages

Defendants further move for summary judgment on Mr. Rainge-El's claim for punitive damages.  Mr. Rainge-El has not specifically responded to Defendants' argument.  (*See* Mr. Rainge-El's Motion (doc. # 120); Mr. Rainge-El's Declaration (doc. # 121)).  While available in § 1983 actions, "punitive damages are to be awarded only when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' "  *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) (quoting *Smith v. Wade*, 461 U.S. 30, 56  (1983)).  "Punitive damages become a discretionary matter for the jury in a section 1983 action only if the plaintiff makes an adequate threshold showing." *Iacobucci v. Boulter*, 193 F.3d 14, 26-27 (1st Cir. 1999).  That threshold showing "requires proof that the defendant acted 'in the face of a perceived risk that [his] actions [would] violate federal law.' "  *Iacobucci*, 193 F.3d at 26 (quoting *Kolstad v. American Dental Ass.*, 527 U.S. 526, 536 (1999)).

Mr. Rainge-El has not presented any basis for an award of punitive damages. (*See* Defendants' Exhibit A-14 (doc. # 116-15) at pp. 32-34 of 34).  The complete lack of evidence in the record, either direct or circumstantial, as to Defendants' evil motives or reckless indifference to Mr. Rainge-El's federally protected rights, defeats the claim for punitive damages as a matter of law.

E.      Injunctive Relief

Mr. Rainge-El's release from incarceration at KCCC moots his request for

injunctive relief.  *See Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997)

(holding that release from prison moots claims for declaratory and injunctive relief);

*McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (stating that release from

prison generally moots claims for injunctive relief).  As there is no reasonable

expectation that Mr. Rainge-El will be subjected to this conduct again, this is not the

type of claim to which an exception to the mootness doctrine applies.  *See Murphy v.*

*Hunt*, 455 U.S. 478, 482 (1982) (recognizing exception to the mootness doctrine where

there is a "reasonable expectation or a demonstrated probability that the same

controversy will recur involving the same complaining party.") (internal quotation marks

and citation omitted).


F.      Privacy Act

Mr. Rainge-El purports to allege a violation of "the 'Privacy Act' 5 USCA § 552a."

(*See* Mr. Rainge-El's Motion (doc. # 120) at p. 6 of 13).  However, "under the Privacy

Act, . . . there is no private right of action against an official or employee of a municipal

or state, rather than a federal, agency."  *Pennyfeather v. Tessler*, 431 F.3d 54, 56 (2d

Cir. 2005) (internal quotation marks and citations omitted).  *See also Fetzer v. Cambria*

*County Human Services*, 384 F. Supp. 2d 813, 815 (W.D. Pa. 2005) (private right of

action created in 5 U.S.C. § 552a(g) does not apply to parties other than agencies of

the federal government);  *Adelman v. Discover Card Services, Inc.*, 915 F. Supp. 1163,

1166 (D. Utah 1996) (same).  Mr. Rainge-El fails to state a claim upon which relief can be granted under the Privacy Act.

G.     Additional Arguments by Mr. Rainge-El

Mr. Rainge-El makes additional arguments that do not appear relevant to his claims, such as: (1) "[t]here was no Facility Transfer Summary ("FTS") on the Plaintiff. . . .;" (2) "Defendants do not contend or deny the ISU program existed . . .;" (3) references to "involuntary servitude or slavery;" (4) references to "the grand sheik;" (5) a reference to "fruits . . . from this poisonous tree . . . ; and (6) that "Defendants have failed to state a claim upon which relief can be granted . . . ."  (*See, e.g.,* Mr. Rainge-El's Motion (doc. # 120) at pp. 5-6, 8-9, 11-12 of 13; Mr. Range-El's Declaration (doc. # 121) at pp. 2, 3 of 15).  Nor has Mr. Rainge-El supported his arguments with any facts.

Whether a party's opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that 'conclusory allegations without specific supporting facts have no probative value.' " *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).   Mere conclusory allegations are insufficient to withstand a defendant's properly supported motion for summary judgment.  *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (quoting Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading")).  Mr. Rainge-El has not met his burden of presenting a basis in law

or specific facts in support of any of these allegations.

Accordingly, IT IS RECOMMENDED that:

1.     The "Motion for Summary Judgment from Defendants Hoyt Brill, Deann Pottorff and Cory Cummings" (filed March 30, 2007) (doc. # 116) be GRANTED.

2.     Mr. Rainge-El's "Motion for Summary Pursuant to Rule 56 of F.R.C.P." (filed April 2, 2007) (doc. # 120) be DENIED.

3.     Summary judgment be entered on the Second Amended Complaint in favor of Defendants Hoyt Brill, Deann Pottorff and Cory Cummings and against Plaintiff Kenneth Rainge-El.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make

timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 29th day of October, 2007.

BY THE COURT:

   s/Craig B. Shaffer
United States Magistrate Judge

23