IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-01831-MSK-CBS

KENNETH RAINGE-EL,

       Plaintiff,

v.

HOYT BRILL,
DEANN POTTORFF, and
CORY CUMMINGS,

       Defendants.

---

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT,
AND DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE**

---

THIS MATTER comes before the Court on cross-motions for summary judgment. The first such motion **(#116)** was filed by the Defendants. The Plaintiff responded to it **(#121),** and the Defendants replied **(#129).** The Plaintiff also filed a separate summary judgment motion **(#120),** to which the Defendants responded **(#124),** and the Plaintiff did not reply. The Magistrate Judge recommends **(#139)** that the Defendants' motion be granted and the Plaintiff's motion be denied. The Plaintiff objects **(#140)** to the recommendation, and the Defendants have responded **(#144)** to his objection. Having considered the same, the Court finds and concludes as follows.

**I. Jurisdiction**

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## II. Issue Presented

The Plaintiff, Kenneth Rainge-El, was an inmate sentenced to a term of imprisonment in the custody of the Colorado Department of Corrections ("CDOC"), but was housed in the custody of the Corrections Corporation of America, a private contractor of CDOC, at the Kit Carson Correctional Center. In this action, he asserts claims against the Defendants, Hoyt Brill, Deann Pottorf, and Cory Cummings,[1] pursuant to 42 U.S.C. § 1983, for incidents which occurred at the Kit Carson Correctional Center.[2]

Although the Second Amended Complaint identifies two enumerated claims against these Defendants, Mr. Rainge-El actually asserts several claims.[3] First, he claims that he mail-ordered religious items, specifically 10 Moorish American pins, which were improperly rejected by the mailroom, then lost by the Defendants. Based thereon, he alleges deliberate indifference to his First Amendment rights, and the negligent loss of his property.[4] He also appears to claim the violation of his right to procedural due process. The Court will refer to these as "the pin claims."

Next, Mr. Range-El claims that the Defendants placed him in segregation for six days after classifying him to be a member of a security threat group based upon his religious affiliation. He

---

[1] To the extent practicable, the Court refers to each Defendant by name. Otherwise, the Court refers to them, collectively, as "the Defendants."

[2] Previously, Mr. Rainge-El asserted claims against Defendants Christine Moschetti and Joe Stommel. By Order **(#79)** dated July 5, 2006, the Court dismissed those claims.

[3] Because Mr. Rainge-El appears *pro se*, the Court construes his Second Amended Complaint and other filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the Court cannot serve as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In addition, Mr. Rainge-El's *pro se* status does not relieve him of the requirement that he comply with the Rules of Civil Procedure. *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[4] In his deposition, Mr. Rainge-El clarified that this first claim is asserted only against Defendants Brill and Cummings, not Defendant Pottorf.

2

alleges that this was cruel and unusual punishment, was done in retaliation for his pursuit of grievances for the loss of the pins, violated the Privacy Act (5 U.S.C. §§ 552a), violated 42 U.S.C. § 1985, and constituted the tort of defamation.[5] The Court will refer to these as "the segregation claims."

The parties have filed cross-motions for summary judgment on these claims. The issue presented is whether a trial is required on any claim.

### III. Standard of Review

Pursuant to Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1), a party may object to any portion of a Magistrate Judge's recommendation by filing specific objections within 10 days of the party's receipt of the recommendation. When timely objections have been filed, as in this case, the Court must review *de novo* the specific conclusions of the Magistrate Judge to which objections have been directed. 28 U.S.C. § 636(b)(1)(C); *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996). Here the Court conducts a *de novo* review of the motions and record before the Magistrate Judge.

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that

---

[5] In his deposition, Mr. Rainge-El clarified that the second claim is asserted only against Defendants Cummings and Pottorff. However, he later stated that the claim is asserted against all Defendants. For purposes of this ruling, the Court treats the claim as being asserted against all Defendants.

must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

4

This case involves cross-motions for summary judgment, which present peculiar problems. Often, parties believe that cross-motions for summary judgment will be considered together, and they simply iterate their own motion as a response to their opponent's. However, the Tenth Circuit has repeatedly directed that cross-motions for summary judgment be determined independently. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). This is because "determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact[.]" *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002).

## IV. Mr. Rainge-El's Motion

Mr. Rainge-El moves for summary judgment on both of his claims. The Defendants oppose this motion, and contend that Mr. Rainge-El has not provided evidence to support his claims.

Because he bears the burden of proof on his claims, Mr. Rainge-El must support his motion with competent evidence which shows that he is entitled to the relief he seeks. However, he has submitted no evidence with his motion. Rather, he relies only upon the arguments and factual assertions in his motion, without any evidence.[6] This is an insufficient showing for the

---

[6] The motion is not subscribed to under penalty of perjury, and thus cannot serve as an affidavit for purposes of Fed. R. Civ. P. 56(e). *See* 28 U.S.C. § 1746.

5

Court to enter summary judgment on his claims. Therefore, the Court is compelled to deny Mr. Rainge-El's motion.[7]

## V. The Defendants' Motion

**A. Material Facts**

Based upon the evidence submitted by the parties, which the Court construes most favorably to Mr. Rainge-El, the Court finds for purposes of this motion that:

1. At all times pertinent to this action, Mr. Rainge-El was an inmate sentenced to a term of imprisonment in the custody of the Colorado Department of Corrections ("CDOC"). At first, he was incarcerated in facilities operated by CDOC, but he was moved to the Kit Carson Correctional Center ("Kit Carson"), a private prison operated by the Corrections Corporation of America, on October 24, 2003. He was released from custody on September 1, 2007 **(#134)**.

2. Before Mr. Rainge-El was transferred to Kit Carson, CDOC classified Mr. Rainge-El as a member of a security threat group due to the suspicion that he is a member of the Crips gang.

3. Mr. Rainge-El is a member of the Moorish Science Temple, a religious faith group.

4. Mr. Rainge-El mail-ordered 10 Moorish Science Temple pins to be worn on

---

[7] Attached to his response to the Defendants' summary judgment motion, Mr. Rainge-El submitted a UCC Financing Statement which has no obvious relevance to this case, as well as a copy of the Defendants' Objections and Responses to Plaintiff's Requests for Production of Documents. If the Court considered such exhibits in conjunction with Mr. Rainge-El's motion, it would make no difference in the outcome. The only material facts evident in the Defendants' discovery responses are: (1) Mr. Rainge-El was not given the pins he ordered; (2) Mr. Brill denied the Step 2 grievance pertaining to the denial of the pins; (3) CDOC granted Mr. Rainge-El's Step 3 grievance concerning the denial of the pins; and (4) CDOC gave Mr. Rainge-El security threat group status before Mr. Rainge-El was transferred to the Kit Carson Correctional Center. Such facts, standing alone, would not be sufficient to establish any of Mr. Rainge-El's claims, for reasons discussed *infra*.

clothing during religious services.

5. The pins arrived in the Kit Carson mailroom in February 2005. Defendant Cory Cummings was the mailroom supervisor. He decided that the pins should be confiscated because he thought they were contraband and that the administrative regulations required it. In making this decision, Mr. Cummings did not consult the administrative regulations to determine whether the pins were a permitted faith group item. Mr. Cummings stated in his affidavit that his decision was not based upon any desire to interfere with Mr. Rainge-El's practice of his religion.

6. The Kit Carson mailroom sent Mr. Rainge-El a Notice of Mail Rejection to advise him that the pins would not be delivered to him.

7. Mr. Rainge-El filed a Step 1 grievance on February 10, 2005, challenging Mr. Cummings' decision to deny him the pins. In this grievance and each one following, Mr. Rainge-El contended that he was entitled to receive the pins under Administrative Regulation 800-01. Mailroom staff member Leslie Davis denied this grievance, and stated that the pins had metal pointed tips and presented a security risk.

8. Mr. Rainge-El filed a Step 2 grievance on March 4, 2005. This grievance was denied by Defendant Hoyt Brill, who was the Warden at Kit Carson. Mr. Brill wrote: "Each facility has the authority to make its own list of contraband items. Denied."

9. Mr. Rainge-El then filed a Step 3 grievance. Grievance Officer Anthony DeCesaro recommended to CDOC's Executive Director, Joe Ortiz, that the grievance be granted. Mr. DeCesaro wrote: "I do not understand why the AR was not read and followed prior to this denial." On September 26, 2005, Mr. Ortiz granted the grievance and directed that Mr. Rainge-El and other Moorish Science Temple inmates be allowed to possess Moorish Science Temple

7

pins, as required by the faith group property regulation, AR 800-01.[8]  Mr. Ortiz wrote: "Directives to prevent future incidents in place.  Medals in question to be replaced."

10. While Mr. Rainge-El's Step 3 grievance was pending, and relying upon Administrative Regulation 300-06, Kit Carson staff destroyed the pins on June 20, 2005.  Mr. Cummings believes that he may have been the person who destroyed the pins, but has no specific recollection of doing so.

11. Kit Carson reimbursed Mr. Rainge-El for the destroyed pins on October 12, 2005.

12. Mr. Rainge-El has made no attempt to buy replacement pins.

13. During his deposition, Mr. Rainge-El testified that he had no evidence that anyone destroyed the pins "on purpose".

14. On August 5, 2005, Mr. Rainge-El was moved from the C Unit to the A Unit,[9] where he remained until August 10, 2005.

15. According to Mr. Rainge-El, the A Unit differed from the general population in a few respects. Mr. Rainge-El was not allowed to shower for 4 days, he was not permitted to make telephone calls, he was on a 24-hour lockdown in a shared cell with a bunkbed, it took longer to get grievance paperwork, he had no access to the law library, it was "unusually cold", and the cell had not been "sanitized" before he was placed in it.

16. Mr. Rainge-El was not the only inmate who was moved to the A Unit on August 5, 2005.  Mr. Rainge-El testified in his deposition that Kit Carson staff came into his general

---

[8] None of the administrative regulations referenced by the parties were submitted for this Court's consideration.

[9] Some records refer to the A Unit as the "AC Unit."  For purposes of this ruling, the Court refers to it as the A Unit.

8

population pod, "just gathered people up", and told the selected inmates to pack up their belongings.

17. While Mr. Rainge-El was in the A Unit, he had no idea why he had been placed there. He later learned from the C Unit manager that suspected gang members had been moved into the A Unit. He testified that he concluded that his religious faith had to be the reason he was moved, stating: "in my previous facilities I was not confronted or warned that I had any management issues pertaining to security via gangs, I can only ascertain that there had to have been relative to my faith group affiliation." [sic].

18. Mr. Rainge-El then submitted a Step 1 grievance challenging his placement in the A Unit. He complained that this constituted placement in an intensive supervised program, complained that he had been denied due process before he was transferred into the A Unit, and complained that he had been designated as a member of a security threat group because of his religious beliefs.

19. Kit Carson staff denied the Step 1 grievance, and responded:

> Because of the overwhelming number of assaults and fights, occurring over the last 60 days the administration at Kit Carson Correctional Center has felt it necessary to conduct a thorough investigation into these events. If placed in AC you were chosen as a possible disruptive influence and your involvement in the activities of the last 60 days will be reviewed. This selection was made based on classification, STG [security threat group], past and present documented behavior. During this time, AC will be placed in a modified lock down. You will be given as much out-of-cell time as safety permits. It is our goal to have all investigations completed in two weeks and return you to normal activities immediately, process COPD [code of penal discipline] charges, seek Ad Seg [administrative segregation] status, or include you in the new Intensive Supervision Unit program.

>This investigation is being conducted in order to maintain the safety and security of the facility. This is not intended to be punitive in nature, but to ensure the safety of all inmates and staff.

20. Mr. Cummings was not involved in the decision to move Mr. Rainge-El from Unit C to Unit A between August 5 and 10, 2005. Mr. Cummings has no knowledge of why Mr. Rainge-El was moved during that time.

21. Defendant Deann Pottorf, who is Kit Carson's security threat group coordinator, has no recollection of being involved in the decision to move Mr. Rainge-El from Unit C to Unit A between August 5 and 10, 2005, and has no idea why Mr. Rainge-El was moved.

22. Mr. Rainge-El testified in his deposition that he has suffered emotional, but not physical, injuries due to the Defendants' conduct.

**B. Analysis**

**1. The Pin Claims**

Mr. Rainge-El alleges that Mr. Brill and Mr. Cummings were deliberately indifferent to his First Amendment rights, and negligently lost the Moorish Science Temple pins he ordered through the mail. He also appears to claim that he was deprived of the pins without adequate due process.

The Defendants do not dispute that Mr. Rainge-El had a First Amendment right to receive the pins, nor that Administrative Regulation 800-01 entitled him to receive the pins. Rather, they contend, *inter alia*, that Mr. Rainge-El cannot show that the pins were denied to Mr. Rainge-El for any reason apart from negligence, and that such neligence does not support a civil rights claim under 42 U.S.C. § 1983.

Mr. Rainge-El responds that the motion should be denied. He offers no specific arguments to rebut those of the Defendants, but instead contends that the Court should disregard

two pieces of evidence offered by the Defendants.[10]

It is undisputed that Mr. Rainge-El was denied religious property to which he was entitled. However, to establish a *prima facie* First or Fourteenth Amendment violation actionable under 42 U.S.C. § 1983, it is not enough for Mr. Rainge-El to show that he was deprived of religious property. Rather, to have an actionable claim, Mr. Rainge-El must present evidence that Mr. Cummings' and Mr. Brill's decisions to deny him the pins and Mr. Cummings' later destruction of the pins were done either with the deliberate purpose of depriving Mr. Rainge-El of religious property they knew he was entitled to have, or with reckless disregard for his rights. *See Jojola v. Chavez,* 55 F.3d 488, 490 (10th Cir.1995) (deliberate conduct required); *Webber v. Mefford,* 43 F.3d 1340, 1343 (10th Cir. 1994) (deliberate or reckless conduct required). When there is only negligent infringement of an inmate's First Amendment rights, or the negligent deprivation of property without due process, there is no actionable claim under 42 U.S.C. § 1983. *See Jones v. Salt Lake County,* 503 F.3d 1147, 1162-63 (10th Cir. 2007) (negligent denial of First Amendment rights); *Daniels v. Williams,* 474 U.S. 327, 328 (1986) (negligent deprivation of property).

There is no evidence before this Court which shows that Mr. Cummings' decision to deny Mr. Rainge-El the pins was the result of deliberate indifference to, or reckless disregard for, Mr.

---

[10] First, he objects to the Court's consideration of defense Exhibit A-1 on the basis that it contains private information about him and may not be authentic. The Court finds it unnecessary to consider Exhibit A-1 in rendering this opinion, because the only pertinent information on the exhibit – that Mr. Rainge-El was a suspected Crips member and therefore classified as a member of a security threat group – is contained in other exhibits, as well.
    Second, he objects to the Court's consideration of Ms. Pottorf's affidavit, because he believes that paragraphs 6 through 10 are not supported by documentary evidence. Pursuant to Fed. R. Civ. P. 56(e), that is not required. Rather, the affidavit must simply be based upon personal knowledge, and to the extent Ms. Pottorf's affidavit is based upon her personal knowledge, the Court has considered it. The Court notes, however, that paragraphs 6 through 10 of Ms. Pottorf's affidavit are not essential to this Court's ruling, and the facts recited in those paragraphs have not been included in the statement of facts, *supra*.

Rainge-El's rights. Rather, the evidence shows that Mr. Cummings failed to read Administrative Regulation 800-01 before determining that the pins were contraband. There is no evidence in the record that Mr. Cummings knew that Mr. Rainge-El was entitled to receive the pins, or knew that there was a regulation governing religious property which might apply. At best, the evidence suggests that Mr. Cummings was negligent.

The evidence pertaining to Mr. Brill is a bit different. Mr. Brill denied Mr. Rainge-El's Step 2 grievance, in which Mr. Rainge-El made specific reference to Administrative Regulation 800-01. Based upon Mr. Brill's response to this grievance, the Court cannot tell whether Mr. Brill read the regulation but negligently and incorrectly interpreted it, whether he read the regulation and gave it a fair interpretation which CDOC later superseded, whether he read the regulation and gave it an unreasonable interpretation, or whether he did not read the regulation.

If Mr. Brill did not read the regulation, the Court cannot determine whether it was due to oversight, recklessness, or deliberate indifference to Mr. Rainge-El's rights. Rather, the Court is left to speculate as to why Mr. Brill did not read the regulation – perhaps because he erroneously recalled what the regulation provided, perhaps because he did not believe that the particular pins at issue were authorized by the regulation because they had metal tips, or perhaps because he did not care what the regulation provided. The Court also has no means of determining what Administrative Regulation 800-01 specifically provided when Mr. Brill denied the grievance, because the parties have not submitted it with their evidence, and thus cannot determine whether the pins were plainly allowed. In short, the evidence in the record does not show that Mr. Brill was deliberately indifferent to Mr. Rainge-El's First Amendment rights, or acted with reckless disregard to such rights. The Court is therefore compelled to dismiss Mr. Rainge-El's pin claims.

## 2. The Segregation Claims

Mr. Rainge-El's second set of claims is premised upon his placement in segregation (Unit A) for a period of six days. He actually asserts seven distinct claims: (1) that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment; (2) that he was denied procedural due process because he was placed in segregation without a prior hearing; (3) that he was classified as a member of a security threat group because of his religious affiliation; (4) that he was retaliated against because he pursued a grievance for the loss of the pins; (5) that he was defamed because he was labeled as a member of a security threat group; (6) that his rights under the Privacy Act, 5 U.S.C. §§ 552a, were violated; and (7) that his rights under 42 U.S.C. § 1985 were violated.

The Defendants contend that Mr. Rainge-El cannot present any evidence to support these claims, and that the evidence in the record shows he cannot prevail on any claim. As previously, Mr. Rainge-El simply contends that the Defendants' motion should be denied.

### Eighth Amendment Claim

The Court treats Mr. Rainge-El's first claim – that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment – as a challenge to the conditions of his confinement in segregation. To establish a *prima facie* Eighth Amendment claim, Mr. Rainge-El must offer evidence that: (1) he was subjected to an excessive risk to his safety or was deprived of the "minimal civilized measure of life's necessities"; and (2) the Defendants knew of the risk or deprivation, but disregarded it. *See Ledbetter v. City of Topeka, Kan.,* 318 F.3d 1183, 1188 (10th Cir. 2003).

There is no evidence in the record which supports either element. Mr. Rainge-El was in

segregation for only six days and any deprivation was short-term. The differences between the A Unit and a general population assignment – less frequent showers, denial of telephone calls, a colder temperature, 24-hour lockdown, delay in receiving grievance paperwork, denial of access to the law library, and an unsanitized cell – were not so objectively serious that they could amount to a constitutional deprivation, particularly given the short duration which Mr. Rainge-El was exposed to them. Mr. Rainge-El has identified no condition of the A Unit which made it unsafe for habitation, nor does he contend that he was denied basic life necessities, such as food, water, a bed, a toilet, a toothbrush, or medical care. In fact, he agrees that he suffered no physical injuries. Finally, there is no evidence that any Defendant named in this lawsuit was responsible for putting Mr. Rainge-El into segregation. The Court must therefore dismiss Mr. Rainge-El's Eighth Amendment claim.

**Due Process Claim**

Mr. Rainge-El also claims that he was denied procedural due process because he was placed in segregation without a prior hearing. To establish a *prima facie* claim that he was denied procedural due process, Mr. Rainge-El must offer evidence that: (1) he was deprived of a liberty or property interest; and (2) he did not receive constitutionally adequate process. *See Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972).

The Supreme Court has instructed that not every restraint upon an inmate implicates a liberty interest. *See Sandin v. Conner,* 515 U.S. 472, 484 (1995) (30-day confinement in segregation did not give rise to a liberty interest). Rather, the restraint must impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" for there to be a liberty interest. *See id.; see also Wilkinson v. Austin,* 545 U.S. 209 (2005). Relevant

factors to consider include "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . . and (4) the placement is indeterminate[.]" *Estate of DiMarco v. Wyoming Dept. of Corrections, Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007).

There is no evidence in the record to establish either element of a due process claim. The evidence instead shows that Mr. Rainge-El was moved to Unit A because of his prior CDOC classification as a member of a security threat group and because there had been fighting in the Kit Carson facility. Inmates who were previously identified as members of security threat groups were detained in segregation pending an investigation which was anticipated to last only two weeks. There is no evidence that his 6-day confinement in segregation pending Kit Carson's investigation was atypical and or that it imposed a significant hardship on Mr. Rainge-El relative to the ordinary incidents of prison life. The evidence also does not show that Mr. Rainge-El was denied any process he might have been entitled to receive. Thus, the Court must also dismiss his procedural due process claim.

**Retaliation Claims**

Mr. Rainge-El's next two claims both are retaliation claims. In the first, he claims that he was classified as a member of a security threat group because of his religious affiliation. In the second, he claims that he was classified as a member of a security threat group and moved to the A Unit because he pursued a grievance for the loss of the pins.

To make a *prima facie* showing on either claim, Mr. Rainge-El must offer evidence which shows that: (1) the Defendants retaliated against him; (2) because he exercised a constitutional

15

right. *See Peterson v. Shanks,* 149 F.3d 1140, 144 (10th Cir. 1998). This requires him to show that he would not have been classified as a member of a security threat group, nor moved to the A Unit, "but for" the Defendants' retaliatory motive. *Id.*

There is no evidence in the record before this Court that any Defendant played a role in moving Mr. Rainge-El to the A Unit, nor in classifying him as a member of a security threat group. Rather, the evidence shows that it was CDOC who classified Mr. Rainge-El as a member of a security threat group due to its suspicion that he was affiliated with a gang. The evidence also shows that Mr. Rainge-El was moved to the A Unit because there had been violent acts within the prison, and other inmates with security threat group status were placed into segregation during the investigation. Thus, the Court must also dismiss Mr. Rainge-El's retaliation claims.

### **Defamation Claim**

Mr. Rainge-El's defamation claim does not fall under 42 U.S.C. § 1983. Rather, it is a state law tort claim and subject to this Court's supplemental jurisdiction under 28 U.S.C. § 1367. To make a *prima facie* showing of defamation, Mr. Rainge-El must present evidence that: (1) the Defendants published a statement about him; (2) the statement was false; (3) the statement was defamatory; (4) the Defendants acted with reckless disregard for the statement's falsity; and (5) Mr. Rainge-El was damaged by the statement. *See Denver Pub. Co. v. Bueno,* 54 P.3d 893, 899 (Colo. 2002).

Here, Mr. Rainge-El alleges that the Defendants falsely labeled him to be a member of a security threat group. However, there is no evidence that the Defendants played a role in giving Mr. Rainge-El this classification, or that they told others that he was classified as a security threat group member. Rather, the evidence shows that it was CDOC who classified him in this manner.

Thus, the Court must also dismiss the defamation claim.

**Privacy Act Claim**

The Privacy Act claim is premised upon a federal statute, 5 U.S.C. § 552a, which is part of the federal Administrative Procedures Act. The Privacy Act prevents federal agencies from disclosing certain private information about individuals without their consent. There is no federal agency defendant in this case, and the Privacy Act thus has no application. The Court therefore dismisses this claim.

**Conspiracy Claim**

Finally, there is the claim under 42 U.S.C. § 1985. This statute proscribes various types of conspiracies: (1) conspiracies to prevent an officer from performing official duties or to harm such officer for performance of a duty; (2) conspiracies to obstruct justice through intimidation of a party, witness or juror; and (3) conspiracies to deny a person the right to equal protection of the laws, the right to vote, or other privileges and immunities. Mr. Rainge-El has not alleged any conspiracy falling under this statute, nor has he offered any evidence to support an agreement among the Defendants in this case to deny him any constitutional or statutory right. Therefore, the Court also must dismiss this claim.

**IT IS THEREFORE ORDERED** that:

(1) Following *de novo* review, the Court adopts the Magistrate Judge's recommendation **(#139)** on the parties' summary judgment motions.

(2) The Plaintiff's motion for summary judgment **(#120)** is **DENIED**.

(3) The Defendants' motion for summary judgment **(#116)** is **GRANTED**.

(4) All of the Plaintiff's claims are dismissed, and the Clerk of Court is directed to

close this case.

Dated this 22nd day of February, 2008

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge